UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

SHIRLEY DOUGLAS,

        Plaintiff,

    v.

SHASTA COUNTY, SHASTA COUNTY SHERIFF'S DEPARTMENT, DEPUTY N. THOMPSON DEPUTY NELSON of SHASTA COUNTY SHERIFF'S DEPARTMENT, DOES 1-10 INCLUSIVE,

        Defendants.

NO. CIV. S-08-2058 FCD CMK

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on Shasta County, Shasta County Sheriff's Department, and deputies Thompson and Nelson of the Shasta County Sheriff's Department's ("defendants") motion for summary judgment.  Plaintiff Shirley Douglas ("plaintiff") opposes the motion.[1]  For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

---

[1] Plaintiff does not oppose summary judgment with respect to defendant Shasta County, nor does plaintiff proffer any evidence in opposition to defendant Shasta County Sheriff's Department's motion for summary judgment.  Accordingly, both motions are GRANTED.

1

## BACKGROUND[2]

This case arises out of a domestic dispute between third parties to this litigation Kerriann Rivera ("Rivera") and her former fiancee, plaintiff's son Jean-Paul Heard ("Heard").  As a result of Rivera and Heard's dispute, the Shasta County Superior Court ordered that Rivera be allowed to remove her belongings from the home owned by plaintiff, which Rivera and Heard had previously cohabitated.  (DSUF ¶ 1.)  Pursuant to the court's order, Heard was not to be present at the time allotted for Rivera to retrieve her belongings from the house.  (Id. ¶ 2.)  Plaintiff's presence was allowed but not required by the court order.  (Id.)  Additionally, Rivera was permitted to come accompanied by family members to help facilitate the removal of her belongings from the premises.  (Id. ¶ 4.)

Upon her arrival at the house at the date and time prescribed by the court order, Rivera was met by plaintiff, who refused her entry onto the premises.  (Id. ¶ 5.)  As a result of plaintiff's obstruction, and because of her suspicion that Heard was present, Rivera summoned Shasta County sheriff's deputies to act as a civil standby to enforce the court's order.  (Id.)  Individual defendants Thompson and Nelson, accompanied by other deputies, arrived at the premises shortly thereafter.  (Id. ¶ 6.)

---

[2]  Unless otherwise noted, the facts set forth herein are undisputed. (Pl.'s Resp. To Def.'s Stmt. of Undisp. Facts ("DSUF"), filed June 21, 2010 (Docket #33-2)).  Where the facts are disputed, the court recounts plaintiff's version of the facts, which are found primarily in plaintiff's deposition testimony. (Shirley Douglas Dep. ("Dep."), filed June 8, 2010 (Docket #32-3)).

After speaking to plaintiff and Rivera, deputies Thompson and Nelson ascertained that Heard was present at the premises in violation of the court's order.  Deputies Thompson and Nelson arrested Heard, who was taken from the premises in a deputy's patrol vehicle.  (Id. ¶ 7; Dep. at 82:6-9.)  The deputies informed plaintiff that Rivera and those present with her were acting pursuant to a valid court order and had permission to be on the premises.  (Dep. at 89:5, 18-22.)  Plaintiff complied and allowed Rivera and those present with her to enter the premises and begin the process of collecting and removing Rivera's belongings.  (Dep. at 96:19-25, 97:1-4.)

Contrary to plaintiff's requests that sheriff's deputies remain at the premises while Rivera was present, Thompson and Nelson, along with the other deputies present, returned to their patrol vehicles and left.  (Dep. at 85:7-25, 86:1-3.)  Shortly thereafter, Rivera, along with at least one present family member, allegedly assaulted and battered plaintiff.  (Dep. at 99:10-15, 100:2-9. 101:17-24.)  Subsequent to the alleged assault and battery and prior to Rivera and her associates leaving the premises, plaintiff spoke on the phone to deputy Nelson.  (Dep. 109:17.)  At no point during this conversation did plaintiff mention having been assaulted or struck by Rivera or her associates.

Some time after Rivera left the premises, plaintiff began to drive to her attorney's office to report the altercation.  (Dep. 117:14-19, 118:8-10.)  En route to her attorney's office, Thompson and Nelson performed a traffic stop and arrested plaintiff, acting on Rivera's allegation that plaintiff had

3

threatened and assaulted Rivera and those with her at the premises, and that she had threatened Rivera's son. (Dep. 120:9-10, 125:1-3, 127:16-21.)

Plaintiff alleges that deputies Thompson, Nelson, the Doe deputies present at the premises, and the Shasta County Sheriff's Department violated her constitutional rights. (Pl.'s Compl. ("Compl."), filed Aug. 29, 2008 (docket #1), ¶ 1.) Specifically, plaintiff alleges that by refusing to remain at the premises after she expressed her concern that Rivera and those accompanying her were "hostile," defendants negligently allowed her to be assaulted and battered, and thereby breached their duty to plaintiff and violated her Constitutional rights. (Compl. ¶ 21-22.) Defendants contend that they acted pursuant to valid court order and had no duty to remain at the premises after enforcing the court order.[3] (Def.'s Mot Summ. J. ("MSJ"), filed June 8, 2010 (docket #27), at 2.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th

---

[3] Defendants also argue that they are immune from section 1983 liability. Because, as set forth *infra*, the court concludes that defendants did not owe plaintiff a duty, the court does not reach the merits of plaintiff's arguments relating to immunity.

4

Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor, viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In other words, the evidence presented must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue

1  of fact conclusively in its favor.  It is sufficient that "the
2  claimed factual dispute be shown to require a jury or judge to
3  resolve the parties' differing versions of the truth at trial."
4  First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968).
5  Thus, the "purpose of summary judgment is to 'pierce the
6  pleadings and to assess the proof in order to see whether there
7  is a genuine need for trial.'"  Matsushita Elec. Indus. Co. v.
8  Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Rule 56(e)
9  advisory committee's note on 1963 amendments).

**ANALYSIS**

Plaintiff alleges that defendants Thompson and Nelson violated 42 U.S.C. section 1983 by allowing non-residents to enter her property, "knowing that she would be assaulted, battered, and robbed or disregarding the probability thereof." (Compl. ¶ 33.)  In response, defendants move for summary judgment, arguing, *inter alia*, that deputies Thompson and Nelson had no duty to remain on the premises while Rivera and those accompanying her collected her belongings.  However, plaintiff argues that defendants created a danger to plaintiff by (1) "depart[ing] from the plain language of [the court] order" by allowing those present with Rivera to enter the premises without verifying their identities as Rivera's family members, (Id. at 7); and (2) acting affirmatively and in direct disregard of evidence that plaintiff required protection from Rivera and her "angry, belligerent group of non family members."  (Compl. ¶¶ 27, 33; Opp'n 9-10.)

/////
/////

6

1    42 U.S.C. section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To establish a claim under section 1983, a plaintiff must initially allege "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." L.W. v. Grubbs ("Grubbs I"), 974 F.2d 119, 120 (9th Cir. 1992).

The Supreme Court has expressly held that "the government's failure to protect an individual from private violence, even in the face of a known danger, does not constitute a [section 1983] violation." DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189, 197 (1989). In DeShaney, petitioner, a minor, brought suit against state social workers who had reason to believe that he was being abused by his father, but failed to remove him from his father's custody. Id. at 191. The court reasoned that the Due Process Clause is phrased as a limitation on state power to deprive individuals of life liberty and property without due process of law, and not as a guarantee of safety and security. As such, it cannot be fairly read to impose an affirmative obligation, absent special circumstances, on state actors to insure against any harm that may befall individuals through other means. Id. at 195-196. "[The Due Process Clause's] purpose was to protect the people from the State, not

7

to ensure that the State protected them from each other." Id. at 196. As such, individuals generally do not have a constitutional right to sue government officials for injuries inflicted by third parties. Id. at 197; Ketchum v. County of Alameda, 811 F.2d 1243, 1247 (9th Cir. 1987); Hinkle v. Blacketter, 2008 U.S. Dist. LEXIS 30289, at *7 (D. Or. April 11, 2008).

However, under the danger creation exception, a government official may be liable under § 1983 when "the state action 'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007) (quoting Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006) (quoting DeShaney, 489 U.S. at 197))); see Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989); Penilla v. City of Huntington Park, 115 F.3d 707, 710 (9th Cir. 1997). The danger creation exception requires affirmative conduct on the part of the state in placing the plaintiff in danger. Grubbs I, 974 F.2d at 121. In Wood, a rape victim brought a section 1983 claim against the police officer who had impounded the car in which she had been a passenger and left her stranded in a high crime area. The court found that the police officer's conduct affirmatively placed the plaintiff in a more dangerous situation and, thus, violated her Constitutionally protected due process right. Wood v. Ostrander, 879 F.2d at 589-590. Similarly, in Penilla, the defendants cancelled a 911 call to paramedics and, after determining that the plaintiff was in serious need of medical attention, dragged him off of his porch where he was in public

view, leaving him locked in an empty house where he later died. <u>Penilla v. City of Huntington Park</u>, 115 F.3d at 710.  The <u>Penilla</u> court held that by taking affirmative actions that significantly increased the danger facing the plaintiff, police officers had violated Penilla's Constitutional protection under section 1983. <u>Id.</u>

 Mere inaction, or refusal to provide police protection, does not constitute the required affirmative conduct.  <u>Johnson v. City of Seattle</u>, 474 F.3d 634 at 641 (affirming the denial the plaintiff's section 1983 claim because they failed to offer evidence that the defendants engaged in affirmative conduct that enhanced the danger to which the plaintiffs had exposed themselves); <u>Wood v. Ostrander</u>, 879 F.2d at 589-590.  "In examining whether an officer affirmatively places an individual in danger, [courts] do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual.  Instead, [courts] examine whether the officers left the person in a situation that was more dangerous than the one in which they found him."  <u>Munger v. City of Glasgow Police Dep't</u>, 227 F.3d 1082, 1086 (9th Cir. 2000).

 Additionally, a plaintiff seeking to invoke the danger creation exception must show that the state official in question acted with deliberate indifference to a known or obvious danger. <u>L.W. v. Grubbs</u> ("Grubbs II"), 92 F.3d 894, 900 (9th Cir. 1996) (finding the defendant could not be held liable to the plaintiff for a section 1983 violation because the plaintiff failed to prove that the defendant knew or should have known of the

9

1  dangerous situation confronting the plaintiff).  Accordingly, to
2  set forth a claim based on a government official's failure to
3  act, a plaintiff must show (1) an unusually serious risk of harm;
4  (2) defendants' actual knowledge of or willful blindness to that
5  elevated risk; and (3) defendants' failure to take obvious steps
6  to address that known, serious risk.  Id.

7       In this case, plaintiff has failed to set forth sufficient
8  evidence to raise a triable issue of fact that defendants
9  violated her constitutional rights by failing to act.  Plaintiff
10 asserts that she informed the deputies that Rivera and those with
11 her were "very hostile."  (Dep. 85:18.)  However, plaintiff
12 concedes that Rivera and the individuals with her displayed no
13 physically aggressive behavior either prior to or during deputies
14 Thompson and Nelson's presence, nor did they behave in a fashion
15 that would alert the deputies to any danger to plaintiff.  (Id.
16 at 96:2-15.)  Plaintiff also concedes that she did not inform
17 defendants of any verbally or physically threatening or abusive
18 behavior when defendants made telephone contact with her after
19 they left the property.  (Dep. 110:3.)  Moreover, plaintiff
20 admits that she was able to leave the property at any point;
21 however, she chose to stay at the property while Rivera and other
22 individuals were present.  Cf. Wood v. Ostrander, 879 F.2d 583
23 (finding the defendants affirmatively created a danger when they
24 left the plaintiff stranded in a high crime area without means of
25 departure).  Based upon these undisputed facts, no reasonable
26 juror could conclude that defendants Thompson and Nelson were on
27 notice of an imminent physical threat to plaintiff, or that
28 /////

1  ignoring plaintiff's request was an act of deliberate
2  indifference to plaintiff's safety.
3      This case is similar to Johnson v. City of Seattle, where
4  the court concluded that the danger creation exception to the
5  general Deshaney rule did not apply.  474 F.3d at 637.  In
6  Johnson, the plaintiffs claimed the Seattle Police Department had
7  violated their constitutional rights after they were assaulted
8  and injured by a riotous crowd during a Mardi Gras celebration in
9  the Pioneer Square District in Seattle.  Based on the
10 demonstrable hostility of those gathered, police officials
11 decided to remain on the periphery of the crowd rather than
12 insert themselves into the fray, risking injury to officers and
13 civilians.  Id.  The plaintiffs argued that this strategic
14 decision deprived them of police protection and directly resulted
15 in their injuries, thus violating section 1983.  The court found
16 the plaintiffs' argument unavailing, reasoning, "[t]he decision
17 [not to intervene] was not affirmative conduct that placed the
18 Pioneer Square Plaintiffs in danger, because it did not place
19 them in any worse position than they would have been in had the
20 police not come up with any operational plan whatsoever."  Id. at
21 641.  Likewise, in this case, deputies Thompson and Nelson's
22 decision to leave the premises and not to intervene in the family
23 dispute between Rivera and plaintiff, despite the fact that
24 plaintiff requested their continued presence, was not affirmative
25 conduct that placed plaintiff in danger.  As was the case in
26 Johnson, defendants did not create the danger, nor did they do
27 anything to render plaintiff more vulnerable to danger.  Id.; see
28 also DeShaney, 489 U.S. at 192.

Plaintiff argues that by enforcing the court order without verifying that the individuals present with Rivera were members of her family, defendants affirmatively created a danger to plaintiff. However, as set forth above, there is no evidence that defendants ignored or were deliberately indifferent to a known risk created by the individuals present at the property. Further, plaintiff fails to present any evidence of a causal nexus between defendants' failure to verify the identities of those present and the injury suffered. By her own deposition testimony, plaintiff alleges that it was Rivera and Rivera's Aunt, rather than the other individuals present, who committed the battery. (Dep. 100:13-15, 101:1-3.) As such, defendants' failure to identify the individuals present with Rivera on the day in question is insufficient to set forth a constitutional violation.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: July 20, 2010

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE